1

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

3   THOMAS SORIA,                          )
                                           )
4                    Plaintiff,            )        3:09-cv-00762-RCJ-VPC
                                           )
5          v.                              )        **REPORT AND RECOMMENDATION**
                                           )        **OF U.S. MAGISTRATE JUDGE**
6   NEVADA DEPARTMENT                      )
    OF CORRECTIONS, *et al.,*              )
7                                          )
                                           )        February 7, 2012
8                    Defendants.           )
    _____)

9

10          This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United

11  States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

12  U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment

13  (#26).[1]  Plaintiff opposed (#50) and defendants did not reply.[2]  The court has thoroughly reviewed

14  the record and recommends that defendants' motion for summary judgment (#26) be granted.

**I. HISTORY & PROCEDURAL BACKGROUND**

15

16          Plaintiff Thomas Soria ("plaintiff"), a *pro se* inmate, is currently incarcerated at Lovelock

17  Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC")

18  (#1-2).  Plaintiff originally filed his civil rights complaint in the Sixth Judicial District Court of the

19  State of Nevada and defendants removed to federal court on December 31, 2009 (#1).  In his

20  complaint, plaintiff alleges that defendants violated his rights to free exercise of religion and to equal

21  protection under the law (#1-2).  Pursuant to 28 U.S.C. § 1915A, the court screened plaintiff's

22  complaint and plaintiff's remaining claims allege violations of the First Amendment, Fourteenth

23  Amendment, and Religious Land Use and Institutionalized Persons Act ("RLUIPA") against NDOC

24  Director Howard Skolnik, former LCC Warden Jack Palmer, and former NDOC Deputy Director

25

26          _____

27          [1]        Refers to the court's docket numbers.

28          [2]        Defendants moved to strike plaintiff's opposition as untimely; however, the court denied
    defendants' motion to strike in a minute order (#60).

1    Don Helling (#12).³  Skolnik, Palmer, and Helling ("defendants") bring the instant motion (#26).

2            Counts I, II, and III of plaintiff's complaint arise out of the following undisputed facts

3    according to plaintiff's complaint (#1-2)⁴ and defendants' motion for summary judgment (#26).

4    Plaintiff submitted an inmate request form on April 26, 2009, and requested approval for a sukkah

5    booth to use during the Sukkot festival (#1-2, p. 19; #26-1, Ex. A).⁵  LCC chaplain Richard Garcia

6    responded and stated: "While the Wardens approved receipt and use of a sukkah booth, Rabbi Katy

7    of Aleph [Institute] notified me that Aleph does not have the funds currently to provide one."  *Id*.

8            On May 11, 2009, plaintiff requested that LCC find another source to donate a sukkah booth

9    or "the materials to build one" (#1-2, p. 20).  Chaplain Garcia responded and said that plaintiff

10   should have the Jewish group facilitator speak with Chaplain Garcia about the matter.  *Id*.  In June

11   2009, plaintiff requested that LCC provide him with a plot of outdoor land on which to place a

12   sukkah booth.  *Id*. at 21.  Chaplain Garcia responded that "it is difficult to determine at this time –

13   without actually seeing a sukkot [sic] booth – where it should be erected. A determination will be

14   made when it actually arrives here."  *Id*.  On August 16, 2009, plaintiff filed an inmate request form

15   and asked LCC to purchase materials so that he could build a sukkah booth or "get a premade [sic]

16   booth from another source, if necessary expending funds" (#1-2, p. 29).  LCC responded that

17   plaintiff had access to the chapel and that the prison did not have funds to purchase a booth.  *Id*.

18   Despite NDOC's approval of the sukkah booth, plaintiff did not purchase or obtain a sukkah booth

19   prior to the 2009 festival (#1-2, p. 21).  On November 11, 2009, plaintiff filed his civil rights

20   complaint (#1-2).⁶

21   _____

22          ³    Plaintiff also named NDOC as a defendant, but the court dismissed the claims against NDOC
     upon screening the complaint pursuant to 28 U.S.C. § 1915A (#12).

23
24          ⁴    When citing to the parties' filings, the court utilizes the page numbers produced by the
     electronic docketing system, at the top of the page.

25          ⁵    Sukkot is an eight-day Jewish festival celebrated in September or October of each year, in
26   which Jewish practitioners eat and pray inside a sukkah booth which is placed outdoors (#26-1, Ex. A, p.1;
     #50, pp. 42-43).

27          ⁶    The court understands that a change of circumstances occurred following the filing of
28   plaintiff's complaint.  However, the court only considers the facts alleged in plaintiff's complaint.
     Defendants did not consent to litigation of issues outside the original pleadings and plaintiff did not amend

                                                    2

1    Plaintiff alleges defendants violated his First Amendment right to free exercise of religion,
2    his right to religious exercise under RLUIPA, and his Fourteenth Amendment right to equal
3    protection when they did not provide an outdoor area for a sukkah booth, "afforing funds, or
4    donations, or materials" for a sukkah booth (#1-2, p. 13). Plaintiff alleges that defendants allowed
5    Native American and Pagan groups to use the outdoor grounds and assigned plots of land for their
6    religious use (#1-2, p. 13).[7] Plaintiff claims that defendants made expenditures for other non-Jewish
7    prisoners to engage in religious activity, but failed to do so for plaintiff. *Id*. Plaintiff requests
8    injunctive relief "commanding defendants, their agents, to alter and modify their customs, practices,
9    policies and otherwise that they afford and provide sukkot and a sukkot [sic] booth." *Id*. at 16.
10   Plaintiff also requests recovery of costs of this litigation, declaratory, and compensatory relief. *Id*.

11   Defendants move for summary judgment on plaintiff's claims regarding his exercise of
12   religion and argue they did not burden plaintiff's practice of religion because LCC approved
13   plaintiff's request for a sukkah booth and use of outdoors grounds (#26). Defendants assert that
14   defendant Skolnik was not personally involved in the alleged violations of the First Amendment and
15   RLUIPA. *Id*. at 17. Regarding plaintiff's equal protection claim, defendants contend that plaintiff
16   offers no evidence of discriminatory intent with regard to NDOC's practice of assigning outdoor
17   grounds to religions which have historically and traditionally met outdoors. *Id*. at 19-20. Moreover,
18   defendants state that they do not purchase religious property for inmates of any faith group. *Id*. at
19   20-21. Defendants argue they cannot be sued under section 1983 in their official capacities for
20   damages and cannot be sued in their individual capacities for damages under RLUIPA. *Id*. at 21-23.

21   Plaintiff opposes and argues that defendants' "approval [of a sukkah booth] was ultimately
22   a denial as they and/or their agents knew full well that purchase was impossible for the plaintiff or
23   Jewish community" (#50, p. 8). Plaintiff discusses several possible ways that LCC could safely
24   allow the use of a sukkah booth. *Id*. at 9. However, plaintiff misunderstands which facts the court

25

26   his complaint. *See* Fed.R.Civ.P. 15.

27       [7]     NDOC Administrative Regulation ("AR") 810.4 classifies Judaism as a "chapel-based"
28   religion because Jewish practitioners historically use a building for group worship (#26-1, Ex. E, p. 35). The
     AR classifies faith groups such as Native Americans and Pagans as "earth-based" religions. *Id*.

1    will consider in evaluating a motion for summary judgment.  Plaintiff focuses on events which

2    occurred after the filing of his complaint.[8]  The court only considers the claims alleged in plaintiff's

3    complaint.  Plaintiff also argues that defendant Skolnik was personally involved in the alleged

4    violations because he promulgated AR 810.  *Id.* at 18.  Plaintiff attaches responses to interrogatories

5    from defendants Helling and Skolnik, and the NDOC.  *Id.* at 48, 64, 68.  However, the evidence

6    plaintiff attaches fails to raise a triable issue of material fact as to plaintiff's claims in the operative

7    complaint.

8         The court notes that the plaintiff is proceeding *pro se*.  "In civil rights cases where the

9    plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the

10   benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir.

11   1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

12                          **II. DISCUSSION & ANALYSIS**

13   **A.    Discussion**

14         **1.    Summary Judgment Standard**

15        Summary judgment allows courts to avoid unnecessary trials where no material factual

16   disputes exist.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

17   The court grants summary judgment if no genuine issues of material fact remain in dispute and the

18   moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court must view

19   all evidence and any inferences arising from the evidence in the light most favorable to the

20   nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  However, the Supreme

21   Court has noted:

22        [W]e must distinguish between evidence of disputed facts and disputed
          matters of professional judgment.  In respect to the latter, our inferences must
23        accord deference to the views of prison authorities.  Unless a prisoner can
          point to sufficient evidence regarding such issues of judgment to allow him
24

---

25        [8]    Following the filing of plaintiff's complaint, LCC chaplain Garcia again contacted the Aleph
26   Institute and requested a sukkah booth donation (#26-1, Ex. A, p. 3).  The Aleph Institute donated a booth
     which arrived at LCC on September 22, 2010.  *Id.*  After LCC allowed Jewish inmates to use the sukkah
27   booth on a trial basis, LCC Warden Robert LeGrand and former NDOC Deputy Director Don Helling
     decided that continued use of the sukkah booth at LCC poses a security risk and a high risk of harm to
28   inmates and staff.  *Id.* at Ex. A at 4-5; Ex. B at 11.

1    to prevail on the merits, he cannot prevail at the summary judgment stage.

2    *Beard v. Banks*, 548 U.S. 521, 530 (2006).  Where reasonable minds could differ on the material

3    facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby,*

4    *Inc.*, 477 U.S. 242, 251 (1986).

5          The moving party bears the burden of informing the court of the basis for its motion, and

6    submitting evidence which demonstrates the absence of any genuine issue of material fact.

7    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

8    the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but

9    must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S.

10   at 248.  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery,

11   against a party who fails to make a showing sufficient to establish the existence of an element

12   essential to that party's case, and on which that party will bear the burden of proof at trial.

13   *Celotex*, 477 U.S. at 322-23.

14   **B.     Analysis**

15         Plaintiff alleges that defendants violated his First and Fourteenth Amendment rights, and

16   his rights under federal law, when they failed to provide him with a sukkah booth and an outdoor

17   area on which to place the booth.

18         **1.     First Amendment Free Exercise Clause**

19         "Convicted prisoners do not forfeit all constitutional protections by reason of their

20   conviction and confinement in prison."  *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  However,

21   "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and

22   rights."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334

23   U.S. 266, 285 (1948)).  A prisoner's right to free exercise of his or her religion is necessarily

24   limited by incarceration, and may be curtailed to achieve legitimate correctional goals or to

25   maintain prison security.  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam).

26   To implicate the Free Exercise Clause, a belief must be "sincerely held" and "rooted in religious

27   belief."  *See Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) (holding that the sincerity test

28   set forth in *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), and *Callahan v. Woods*, 658 F.2d

1  679, 683 (9th Cir. 1981), determines the applicability of the Free Exercise Clause).  Defendants

2  do not contest plaintiff's sincerely held belief in using a sukkah booth during the Sukkot festival.

3       "When a prison regulation impinges on inmates' constitutional rights, the regulation is

4  valid if it is reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 883-84

5  (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Under *Turner,* the court must balance four

6  factors in determining whether a prison regulation is reasonably related to legitimate penological

7  interests.  "First, there must be a 'valid, rational connection' between the prison regulation and

8  the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89.  Second,

9  the court must determine whether there are "alternative means of exercising the right that remain

10  open to prison inmates." *Id.* at 90.  Third, the court must consider "the impact accommodation

11  of the asserted constitutional right will have on guards and other inmates, and on the allocation

12  of prison resources generally." *Id.*  Fourth, "the absence of ready alternatives is evidence of the

13  reasonableness of a prison regulation."  LCC approved plaintiff's request for a sukkah booth.

14  Thus, the restriction at issue is LCC's refusal to purchase a sukkah booth with prison funds.[9]

15  Plaintiff cites to a case and argues that under the *Turner* factors, the inmate in that case had a right

16  to a sukkah booth (#50, p. 9).  However, the facts of that case are distinguishable because there

17  prison officials denied an inmate's request for a sukkah booth.[10]

18       The first *Turner* factor requires determining whether there is a legitimate penological

19  interest that is rationally related to the disputed regulation.  Defendants assert that the Supreme

20  Court has stated that a prison is not financially responsible for financing an inmate's religious

21  materials (#26, p. 9).  *See Cruz v. Beto*, 405 U.S. 319, 323 (1972).  The court agrees.  It would be

22  unreasonable to require a prison to provide materials for every religion and sect practiced in their

23  prison.  *Id*.  While prison officials may not deny a prisoner religious material if someone offers

24

---

25  [9]  To the extent plaintiff alleges defendants violated his rights when they did not provide him
26  a plot of land, evidence shows that defendants did not deny plaintiff use of outdoor grounds.  They simply
   advised him that they would determine where to place the sukkah booth when it arrives at LCC (#26-1, Ex.
27  A; #1-2, p. 21).

28  [10]  Plaintiff cites to *Sisney v. Reisch*, 533 F.Supp. 2d 952 (D.S.D. 2008).  The court notes that
   this case is not in the Ninth Circuit and is thus not persuasive authority.

1    to supply it, they are not required to purchase the material themselves. *Id*. Defendants' refusal

2    to incur the costs of purchasing a sukkah booth is rationally related to economic considerations,

3    which constitutes a legitimate penological interest and is supported by law.[11] This factor favors

4    the defendants.

5        The second *Turner* factor examines whether plaintiff has "alternative means by which he

6    can practice his religion" or is "denied all means of religious expression." *Shakur*, 514 F.3d at

7    886. Defendants assert that under AR 810, plaintiff has alternative means by which he can

8    practice his religion (#26, p. 12). Plaintiff may participate in fasts, attend Jewish services, pray,

9    observe holy days, study his religion, possess Jewish allowable personal religious property, and

10   make use of Jewish allowable group religious property during group worship (#26-1, Ex. E, pp.

11   64-65). Plaintiff claims that denial of a sukkah booth adversely affects aspects of his religious

12   practice; however, he does not argue that he is denied all means of religious expression (#50, p.

13   10). Moreover, defendants approved plaintiff's request for a sukkah booth. This factor favors

14   the defendants.

15       The third *Turner* factor considers the "impact accommodation of the asserted

16   constitutional right will have on guards and other inmates, and on the allocation of prison

17   resources generally." *Turner*, 482 U.S. at 90. In his affidavit, former NDOC Deputy Director

18   Don Helling states that NDOC does not purchase religious property for inmates of any faith group

19   (#26-1, Ex. C, p. 17). The court is aware that prison administration is an "inordinately difficult

20   undertaking that requires expertise, planning, and the commitment of resources, all of which are

21   peculiarly within the province of the legislative and executive branches of government." *Resnick*

22   *v. Adams*, 348 F.3d 763, 770-71 (9th Cir. 2003). Because an exception for plaintiff would place

23   burdens on the prison with respect to prison resources, this factor weighs in favor of defendants.

24   *See Henderson v. Terhune*, 379 F.3d 709, 714 (9th Cir. 2004).[12]

25

26       [11]   The court also notes the practical challenges associated with a requirement that a prison
     provide religious material to every religious sect in prison.

27       [12]   While not dispositive, the Ninth Circuit has taken into account the potential to create
28   prisoner unrest because of the appearance that certain groups of inmates were receiving preferential
     treatment. *See Henderson*, 379 F.3d at 714.

The fourth *Turner* factors requires consideration of whether "there are ready alternatives to the prison's current policy that would accommodate [plaintiff] at de minimus cost to the prison." *Shakur*, 514 F.3d at 887. "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation," *Washington v. Harper*, 494 U.S. 210, 225 (1990), while the existence of alternatives may be "evidence that the [policy] is not reasonable but is an 'exaggerated response' to prison concerns." *Turner*, 482 U.S. at 90-91. Plaintiff maintains that defendants should have sought another source for donating a sukkah booth or the materials to build one (#50, p. 7). Defendants state that LCC never refused a donation of a sukkah booth from the Aleph Institute or any other Jewish organization (#26-1, Ex. D, p. 22). Plaintiff does not provide evidence that any other organization offered to donate a sukkah booth. Plaintiff's suggestion that LCC purchase the materials to build a sukkah booth would require them to spend prison funds to purchase religious property and is thus not a ready alternative for the reasons discussed above. Accordingly, this factor tips in favor of defendants.

Because plaintiff does not present an issue of material fact concerning the reasonableness of the restriction or defendants' refusal to provide him with use of the outdoor grounds, the court recommends summary judgment be granted in favor of defendants on plaintiff's First Amendment claim.

## 2. RLUIPA

Plaintiff brings his claim under RLUIPA, 42 U.S.C. § 2000cc *et seq.*, which provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

1      To establish a RLUIPA violation, the plaintiff bears the initial burden to prove that the

2   defendants' conduct places a "substantial burden" on his "religious exercise." *Warsoldier v.*

3   *Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). Once the plaintiff establishes a substantial burden,

4   defendants must prove that the burden both furthers a compelling governmental interest and is the

5   least restrictive means of achieving that interest. *Id.* at 995. RLUIPA is to be construed broadly

6   in favor of the inmate. *See* 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of

7   a broad protection of religious exercise, to the maximum extent permitted by the terms of this

8   chapter and the Constitution").

9      Although RLUIPA does not define "substantial burden," the Ninth Circuit has stated that

10  a substantial burden is one that is "'oppressive' to a 'significantly great' extent" and "a 'substantial

11  burden on 'religious exercise' must impose a significantly great restriction or onus upon such

12  exercise." *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*,

13  360 F.3d 1024, 1034 (9th Cir. 2004)). The burden need not concern a religious practice that is

14  compelled by, or central to, a system of religious belief, *see* 2000cc-5(7)(A); however, the burden

15  must be more than an inconvenience. *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033 (9th

16  Cir. 2007), *aff'd en banc*, 535 F.3d 1058, 1068 (9th Cir. 2008) (internal quotations and citations

17  omitted). A burden is substantial under RLUIPA when the state, "denies [an important benefit]

18  because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent

19  to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (quoting *Thomas v.*

20  *Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (internal quotations

21  omitted)).

22     Here, plaintiff alleges that defendants burdened his religious exercise by their refusal to

23  provide an outdoor area for use during the Sukkot festival, and to provide funds, donations, or

24  materials for a sukkah booth. As their first exhibit, defendants submit a declaration from LCC

25  Chaplain Richard Garcia as evidence that LCC approved plaintiff's request for a sukkah booth and

26  use of outdoor grounds, but had not successfully achieved the donation of a booth (#26-1, Ex. A).

27  Plaintiff does not dispute this fact (#1-2, pp. 19-20).

28     The burden is on plaintiff to establish any fact as to how defendants have placed a

9

substantial burden on his religious exercise. While plaintiff argues that defendants substantially burdened his religious practice when they did not afford funds for the purchase of a sukkah booth, the Supreme Court has stated that "RLUIPA does not require a State to pay for an inmate's devotional accessories." *See Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005). Plaintiff only makes conclusory statements that defendants hindered the arrival of a sukkah booth (#50, p. 14). Further, defendants did not deny plaintiff use of outdoor grounds, but only stated that they would determine where to place the sukkah booth once it arrived (#1-2, p. 21).

Plaintiff fails to carry his burden under RLUIPA in showing that LCC's decision not to purchase a sukkah booth constitutes a substantial burden on the exercise of his religious beliefs. In fact, plaintiff submits responses from LCC to plaintiff's inmate request forms authorizing plaintiff to obtain and use a sukkah booth and use the outdoor grounds during the Sukkot festival (#1-2, pp. 19-21). Defendants did not impose a "significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). Although defendants did not purchase a sukkah booth for plaintiff, they did not prevent the donation of a sukkah booth or prevent plaintiff from obtaining one. Without a demonstration of a substantial burden or that defendants were required to purchase a sukkah booth, the court need not apply the strict scrutiny test. Therefore, the court recommends that summary judgment be granted on plaintiff's RLUIPA claim as there are no triable issues of material fact.[13]

### 3. Requirement of Personal Participation

While the court recommends defendants' motion for summary judgment be granted, defendant Skolnik is also entitled to summary judgment because he did not personally participate in the alleged violations. "Liability under [§] 1983 arises only upon a showing of personal

---

[13]     Defendants are also entitled to summary judgment on plaintiff's RLUIPA claim for monetary damages because plaintiff cannot recover monetary damages against defendants sued in their individual or official capacities. *See Mauwee v. Donat*, 2009 WL 3062787, at *6 (D.Nev. Sept. 18, 2009) (citing *Rendelman v. Rouse*, 569 F.3d 182, 184 (4th Cir. 2009); *see also Holley v. Cal. Dep't of Corrections,* 599 F.3d 1108, 1112 (9th Cir. 2010) (holding that a plaintiff cannot maintain a claim under RLUIPA against defendants in their official capacities for monetary damages).

1   participation by the defendant.  A supervisor is only liable for the constitutional violations of . . .

2   subordinates if the supervisor participated in or directed the violations, or knew of the violations

3   and failed to act to prevent them.  There is no respondeat superior under [§] 1983."  *Taylor v. List,*

4   880 F. 2d 1040, 1045 (9th Cir. 1989) (citations omitted)*; see also Ashcroft v. Iqbal*, 557 U.S. 662

5   (2009); *Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (concluding it is

6   proper to dismiss where there are no allegations of knowledge of or participation in an alleged

7   violation).

8          Plaintiff sues former NDOC Director Howard Skolnik for violations under the Free Exercise

9   Clause, RLUIPA, and the Equal Protection Clause (#1-2).  Defendants move this court to grant

10  summary judgment with regard to plaintiff's claims against defendant Skolnik under the First

11  Amendment and RLUIPA, and argue that he did not personally participate in or direct the alleged

12  violations (#26, p. 17).  They further assert that defendant Skolnik did not know of any alleged

13  violations and fail to prevent them.  *Id*.  Defendant Skolnik did not respond to any of plaintiff's

14  relevant grievances or kites (#1-2, pp. 19-29).  Plaintiff argues that defendant Skolnik was the

15  primary policy maker and that these policies (AR 810) were the basis for denial of a sukkah booth

16  (#50, p. 18).  However, because LCC approved plaintiff's request for a sukkah booth, plaintiff

17  cannot prove that defendant Skolnik implemented a policy "so deficient that the policy is a

18  repudiation of constitutional rights" and is "the moving force of the constitutional violation."

19  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*, 880 F.2d at 1045.  The court

20  recommends defendant Skolnik be entitled to summary judgment as to plaintiff's First Amendment

21  and RLUIPA claims due to his lack of personal participation in the alleged violations.

22         **4.      Fourteenth Amendment Equal Protection Clause**

23         The Equal Protection Clause requires the State to treat all similarly situated people equally.

24  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Each prisoner is entitled

25  to a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow

26  prisoners who adhere to conventional religious precepts."  *Cruz*, 405 U.S. at 322.  In the prison

27  context, however, even fundamental rights such as the right to equal protection are judged by a

28  standard of reasonableness – specifically, whether the actions of prison officials are "reasonably

11

1   related to legitimate penological interests." *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004)

2   (quoting *Turner*, 482 U.S. at 89).  To establish a violation of the Equal Protection Clause, the

3   prisoner must present evidence of discriminatory intent.  *See Washington v. Davis*, 426 U.S. 229,

4   239-40 (1976).

5          Plaintiff alleges two equal protection violations: 1) that defendants violated his rights as a

6   Jewish inmate because LCC does not have specifically designated "Jewish outdoor grounds" but

7   Native American and Pagan religions in the NDOC are allotted outdoor religious grounds; and 2)

8   that defendants and their agents made expenditures for other non-Jewish prisoners for religious

9   activity, but failed to do so for plaintiff's request for a sukkah booth.

10          **a.    Jewish Outdoor Ground**s

11          NDOC AR 810 provides that "earth-based" religions such as Native American and Pagan

12   groups may have access to outdoor religious grounds (AR 810.4; #26-1, Ex. E, p. 35).  AR 810

13   classifies the Jewish faith as a "chapel-based" religion because it is a group that traditionally uses

14   a building for worship.  *Id*.  Plaintiff claims this classification is unconstitutional because it affords

15   Native Americans and Pagan groups the opportunity to use the outdoor grounds (#1-2, p. 13).

16   Defendants contend that plaintiff is not similarly situated to inmates who practice religions that

17   historically meet outdoors (#26, p. 19).  Further, defendants argue the differing treatment of

18   religions does not stem from discriminatory intent, but rather from an effort to accommodate

19   inmates of differing religious backgrounds.  *Id*.  Lastly, defendants assert that plaintiff offers no

20   evidence to support his claim that defendants failed to make a reasonable accommodation for the

21   purposes of discriminating against him on the basis of his religious beliefs.

22          The court agrees with defendants.  Plaintiff does not present evidence that defendants

23   intentionally discriminated against plaintiff in the exercise of his religious beliefs based on his race

24   or religion.   The only evidence plaintiff offers of such alleged discriminatory intent is his

25   observation that defendants allow different religious groups to engage in different practices.   In

26   *Cruz v. Beto*, the Supreme Court stated that every religious sect or group within a prison need not

27   have identical facilities or personnel.  405 U.S. at 322 n.2.  Simply alleging differing classifications

28   does not evidence discriminatory intent as defendants are only required to ensure that members of

1    different faith groups receive equal opportunity to pursue their faith, not equal or identical practices.

2    Despite the classification in AR 810.4, LCC approved plaintiff's request for a sukkah booth and for

3    use of the outdoor grounds.[14]   Plaintiff submits no evidence that defendants acted without a

4    legitimate purpose or with discriminatory intent.

5            **b.      Expenditures for Non-Jewish Inmates**

6            According to defendants' affidavits, LCC does not purchase religious property for inmates

7    of any faith group (#26-1, Ex. A, p. 1; Ex. C, p. 17).   Plaintiff's conclusory allegations in his

8    complaint that defendants made expenditures for other non-Jewish prisoners for religious activity

9    are unsupported by evidence.   Plaintiff states in his opposition that due to a "lack of understanding

10   of how to proceed with this issue, and an inability to get appropriate affidavits, the plaintiff will not

11   pursue this issue" (#50, p. 20).   Because defendants offer evidence that they did not make

12   expenditures for religious property for non-Jewish inmates and plaintiff fails to offer evidence to

13   the contrary, the court recommends summary judgment be granted on this claim as there is no

14   triable issue of material fact.

15           Therefore, the court recommends that summary judgment be granted on plaintiff's Equal

16   Protection claims as plaintiff does not submit evidence demonstrating intentional discrimination

17   or discriminatory intent by defendants.[15]

18                              **III. CONCLUSION**

19           Based on the foregoing and for good cause appearing, the court recommends that

20   defendants' motion for summary judgment (#26) on plaintiff's remaining claims under the First and

21

22

23

24           [14]      The court's previous analysis under the First Amendment demonstrates that defendants had
25   a penological interest in declining to purchase the sukkah booth, and did not discriminate against plaintiff
     based on his religion.  Further, the court's analysis under RLUIPA demonstrates that defendants afforded
26   plaintiff a "reasonable opportunity of pursuing his faith" by approving his request for a sukkah booth and
     his request to use the outdoor grounds.  *See Cruz*, 405 U.S. at 322.

27           [15]      Pursuant to the Eleventh Amendment, defendants are also entitled to summary judgment on
28   plaintiff's First and Fourteenth Amendment claims for monetary damages against defendants in their official
     capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Fourteenth Amendments, and under RLUIPA be **GRANTED**.[16]  The court also recommends that defendants' motion for summary judgment (#26) as to defendant Skolnik be **GRANTED** due to his lack of personal participation in the alleged violations.  The parties are advised:

       1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

       2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

       **IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#26) be **GRANTED** as to plaintiff's First and Fourteenth Amendment claims and RLUIPA claim.

       **IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (#26) as to plaintiff's First Amendment and RLUIPA claims against defendant Skolnik be **GRANTED**.

       **DATED**: February 7, 2012.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[16]    Because plaintiff has not demonstrated that defendants violated his rights, the court need not reach issues of qualified immunity.

14